Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 6340 | DATE | November 30, 2004 |
| CASE TITLE | *U.S. ex rel. Arreola v. Chandler* | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

1) ☐ Filed motion of [ use listing in "Motion" box above.]
2) ☐ Brief in support of motion due _____.
3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
4) ☐ Ruling/Hearing on _____ set for _____ at _____.
5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
7) ☐ Trial[set for/re-set for] on _____ at _____.
8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

10) ■ [Other docket entry] After careful consideration of the entire record, Gilbert Arreola's § 2254 petition [-1] is denied in its entirety. In addition, the clerk is directed to substitute Nedra Chandler as the respondent. The clerk is directed to enter a Rule 58 judgment and to terminate this case. Enter Memorandum and Order.

11) ■ [For further detail see order attached to the original minute order.]

| No notices required, advised in open court. | | | |
|---|---|---|---|
| No notices required. | | number of notices | Document Number |
| Notices mailed by judge's staff. | | DEC 0 3 2004 | |
| Notified counsel by telephone. | | date docketed | |
| Docketing to mail notices. | | docketing deputy initials | 13 |
| Mail AO 450 form. | | | |
| Copy to judge/magistrate judge. | | | |
| RTS/c | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. GILBERT ARREOLA, Petitioner, | ) ) ) ) | |
| v. | ) ) | 04 C 6340 |
| NEDRA CHANDLER,[1] Respondent. | ) ) ) | |

## MEMORANDUM AND ORDER

After a jury trial in state court, petitioner Gilbert Arreola was convicted of the first degree murder of his brother, Rodrigo Arreola.[2] After failing to obtain relief in the state courts, Gilbert filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, Gilbert's petition is denied.

I.  Background

The court will presume that the state court's factual determinations are correct for the purposes of habeas review as Gilbert has not provided clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The court thus adopts the state court's recitation of the facts, and will briefly summarize the key facts which are relevant to Gilbert's § 2254 petition.

---

[1] Arreola's petition named Jerry Sternes as the respondent. Arreola is currently incarcerated at the Dixon Correctional Center, where Nedra Chandler is the warden. Accordingly, Chandler is hereby substituted as the respondent. *See* Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts.

[2] To avoid confusion when the court refers to the Arreola brothers, the court will use their first names in this opinion.

A.  Gilbert's Trial

On September 17, 1992, Rodrigo Arreola died as a result of injuries sustained after he was run over with a car. Gilbert, Rodrigo's brother, was subsequently charged with aggravated battery and first degree murder. At trial, Rodrigo's wife, Delilah Crane, testified that on September 17, 1992, she and Rodrigo lived in the basement of her mother-in-law's home. That evening, Gilbert, his wife Debra, their three children, and two men came to Rodrigo and Crane's apartment. According to Crane, Gilbert was carrying a cooler with a "quite full" gallon bottle of vodka or gin but did not appear to have been drinking.

Rodrigo and Crane left in their car to go to a restaurant, and Gilbert and the others followed in Gilbert's brown van. When Rodrigo stopped at a gas station, Gilbert parked the van and the two men had a short conversation. While Rodrigo was inside paying, Gilbert got into the car with Crane and drove into the street and then back into the gas station. As Rodrigo exited the station, Gilbert drove directly towards him despite Crane's efforts to stop him. Gilbert drove into Rodrigo, who landed on the windshield. With Rodrigo on the windshield, Gilbert drove through a wood fence and into a brick wall. Gilbert returned to the van, briefly struggled with a bystander, and drove off in the van.

Cathy Busotov, the gas station cashier, testified that when Rodrigo paid her for the gas, he pointed to his car but it was not there. Instead, she saw that someone was driving his car slowly around the gas pumps. According to Busotov, at about 3:45 p.m., she saw a car driven by a male strike Rodrigo. The cashier also saw a man walking from the direction of the crash towards a brown van. That man struggled with several other men and then drove off in a brown van.

Ernesto Medina testified that on the day of the incident, he rode to Rodrigo's apartment with Gilbert. On their way to the apartment, they consumed approximately six shots of vodka each. Medina accompanied Gilbert to the gas station. Medina did not believe that Gilbert was "high" and was not concerned about Gilbert's ability to drive or his drinking. Medina did not see Gilbert get in and out of Rodrigo's car. When he heard Crane scream, he got out of the van and saw Gilbert struggle with a bystander prior to departing the scene in the van.

Chicago Police Officer Wayne Campbell testified that he was dispatched to Gilbert's home shortly after the incident, where he saw a brown van parked outside. Campbell arrested Gilbert and read him his *Miranda* rights. According to Campbell, Gilbert did not appear to be drunk and there were no empty liquor bottles visible in the house. At the police station, Gilbert told Campbell that he would kill him as soon as he got out.

Assistant State's Attorney Neera Walsh testified that she questioned Gilbert after his arrest. After she read him his *Miranda* rights, Gilbert told her that the incident was over $6,000 Rodrigo owed him and that it was a family matter as Rodrigo was having an affair with Gilbert's wife. Gilbert also said that he hoped he had not broken Rodrigo's legs, the incident was an insurance scam, and Rodrigo would never sign a complaint against him. Gilbert refused Walsh's offer to prepare a written statement and denied driving the van to the gas station and driving Rodrigo's car.

Chicago detective Thomas Ptak testified that he was sent to investigate an attempted murder at the gas station. He found Rodrigo's car facing a brick wall. He also saw tire marks leading to a six-foot high wood fence that had been knocked down. At the police station, Ptak heard Gilbert state that Rodrigo "had it coming to him." The parties stipulated that if called, an assistant medical examiner would testify that cerebral injuries caused Rodrigo's death.

Gilbert presented an alibi defense. Specifically, he testified that he was not in the van on the day that Gilberto was attacked. He asserted that he had brought his children to school and went to his mother's house. He went downstairs, where Rodrigo had an apartment, and he and Rodrigo drank a half of a bottle of rum. Medina was not there. Gilbert left at approximately 12:15 p.m. and went directly home, where he stayed until the police arrived.

In addition, Gilbert testified that he had introduced Rodrigo to an insurance agent and saw Rodrigo sign a life insurance policy. An insurance agent testified that he met with the brothers in May of 1992. At that time, Gilbert made the first payment to begin a $50,000 life insurance policy for Rodrigo which named Rodrigo's wife and mother as the sole beneficiaries.

Gilbert's mother, Pilar Arreola, testified that he came to her house on the day of the incident with his wife and some other men. Gilbert was very drunk when he left, so his wife drove and the men helped Gilbert into the car. Gilbert's mother did not know what time the group left her house. Theresa Zielinski, Gilbert's sister-in-law, testified that she lived in Gilbert's house and that he was home that day between noon and four o'clock, when the police arrived. He had been drinking, but not a lot, and had no trouble moving around the house or speaking with others. Similarly, Gilbert's wife testified that she and Gilbert went to Gilbert's mother's house after picking up their children from school at 11:30 a.m. They stayed for a short time and then returned home, where Gilbert stayed until the police came.

During the jury instruction conference, the trial judge found that a rational jury could not reach a reckless homicide verdict given the evidence presented. The court thus rejected Gilbert's instruction. The jury found Gilbert guilty of first degree murder.

At Gilbert's sentencing hearing, Gilbert's mother-in-law testified that Gilbert had contributed to his family and that his children missed him. The State presented a victim impact

- 4 -

statement from Rodrigo's sister. In addition, it noted that Gilbert had given false information for the presentence investigation report and stressed the brutality of the offense as well as Gilbert's lack of remorse. The trial court agreed that Gilbert had shown a total lack of remorse for his "terribly cruel" actions and tried to blame everyone else for this brother's death. It thus sentenced him to 40 years in prison.

### B. Direct Appeal

On direct appeal, Gilbert unsuccessfully argued that his 40-year sentence was excessive. He also argued that the trial court erred when it refused to instruct the jury on the lesser included offense of reckless homicide because evidence in the record supported an inference that Gilbert was intoxicated at the time of the offense. The Illinois Appellate Court noted that under Illinois law, this instruction was applicable only if Gilbert established that he had a blood or breath alcohol level of 0.10 or more, or that he was incapable of safely driving. The court surveyed the evidence in the record regarding Gilbert's alcohol consumption and concluded that it did not support a finding of recklessness. It also held, in the alternative, that the evidence showed clearly and convincingly that Gilbert had committed first degree murder because he drove into Rodrigo, struggled with people who tried to detain him, fled the scene, and later said that Rodrigo had it coming to him. It thus affirmed Gilbert's conviction and sentence. Gilbert filed a petition for leave to appeal ("PLA") raising these same two issues. and the Illinois Supreme Court denied it on June 4, 1997.

### C. Collateral Appeal

On June 27, 1997, Gilbert filed a pro se state post-conviction petition alleging that Robert Bogart, his privately retained counsel, had provided ineffective assistance. Bogart had represented Gilbert in his pretrial proceedings until his death. Gilbert contended that Bogart had

- 5 -

fabricated Gilbert's alibi defense and instructed him to testify that he was not at the gas station at the time of Rodrigo's death. He also asserted that if Bogart had conducted a basic investigation, he would have discovered that Gilbert has a history of driving while intoxicated and that he was intoxicated at the time of the incident that lead to Rodrigo's death. In addition, Gilbert stated that Bogart prevented him from explaining what happened at the gas station.

After Bogart's death, Gilbert retained Jerome Rottenberg, who represented Gilbert at trial. Gilbert contends that Rottenberg rendered ineffective assistance because he failed to conduct a pretrial investigation, review discovery materials provided by the State, properly impeach some of the State's witnesses, and failed to present evidence showing that the police were biased against him. Gilbert asserted that if Bogart and Rottenberg had provided constitutionally adequate assistance, the court would have given the jury an involuntary manslaughter and reckless homicide instruction.

The trial court appointed counsel. Gilbert nevertheless filed a pro se petition alleging: (1) that Rottenberg failed to file proper pretrial motions or select an impartial jury; (2) that the prosecutor engaged in misconduct; (3) that he failed to receive a speedy trial; (4) that his appellate counsel on direct appeal was ineffective for failing to raise: (a) an ineffective assistance of trial counsel claim, (b) a prosecutorial misconduct claim, (c) a speedy trial claim, and (d) an equal protection claim. Appointed counsel certified that he had consulted with Gilbert and reviewed the record and Gilbert's filings, and that there was no need to file an amended petition.

The trial court held an evidentiary hearing which, at counsel's request, focused on Bogart's alleged strategy of presenting false alibi testimony. Gilbert's basic position was that this strategy was prejudicial because it prevented him from offering conflicting evidence regarding his alcohol consumption and his presence at the scene. He thus testified that he told

- 6 -

Bogart that he was drinking at Rodrigo's home, was intoxicated, and stopped at a gas station on the way to a restaurant. While Rodrigo paid, Gilbert got into Rodrigo's car to "engage in a flirtatious confrontation" with Crane, Rodrigo's wife. He immediately started "flirting around with [Crane's] feet." As he did so, he got tangled in the seatbelt and hit the gear shift on the floor. The car changed gears, Gilbert's new shoes slipped on the gas pedal, and the car moved forward.[3] Gilbert knew that the car hit a fence and a brick wall but did not see anyone in the car's path.

Gilbert testified that after he told Bogart this version of events, Bogart told him to "just say you weren't there" and that "we could say you had an alibi." Gilbert responded that he did have an alibi because he was arrested at his house. After this initial meeting, Gilbert met with Bogart three additional times. The false alibi issue never came up again.

After Gilbert retained Rottenberg, he did not discuss the circumstances relating to Rodrigo's death with him. He also did not tell Rottenberg that Bogart told him to testify about a false alibi at trial. After his conviction, Gilbert hired a new attorney, Barry Spector. Gilbert did not tell Spector about Bogart's alleged instructions to present a false alibi theory at trial.

At the evidentiary hearing, Virginia Martinez testified that she lived with Gilbert from 1987 to 1990 and that certain police officers came to their home at least four or five times per month to harass him. She also stated that she had accompanied Gilbert to the police station on at least ten occasions so he could file complaints and that none of Gilbert's lawyers had interviewed her.

---

[3] The court notes that Gilbert has not consistently maintained the "feet flirting" defense as his § 2254 petition states that he hit Rodrigo due to an accelerator malfunction. See petition at p. 5, 6-B, 6-H.

-7-

The State did not present any evidence. The trial court found that Gilbert's testimony about Bogart's alleged advice was incredible because, among other things, he believed that Gilbert would have mentioned the matter to successor counsel and to an appellate lawyer representing him after the jury flatly rejected his alibi testimony. The trial court also noted that Gilbert's admission that he perjured himself at trial made him less credible and found that the "newly presented version of how [Gilbert's] brother met his end lacks credibility from start to finish." The trial court also found that the failure to present Martinez' harassment testimony at trial was not prejudicial given the other evidence presented. It thus denied Gilbert's request for post-conviction relief.

The Illinois Appellate Court refused to upset the trial judge's determination that Gilbert lied when he said that Bogart told him to lie at trial. It also agreed with the trial court's finding that Rottenberg's failure to present Martinez' testimony at trial was not prejudicial due to the overwhelming evidence of Gilbert's guilt. It, therefore, affirmed the trial court. Gilbert filed a PLA containing all of his post-conviction claims plus the arguments that the post-conviction court did not address all his claims and his appellate counsel was ineffective because he did not file a brief addressing all of the issues raised by Gilbert in his pro se pleadings. The Illinois Supreme Court denied the PLA and this federal habeas petition followed.

## II. Discussion

In his § 2254 petition, Gilbert asserts that:

(1) the trial court's failure to offer a reckless homicide instruction violated his constitutional rights because evidence presented at trial showed that he acted with a reckless disregard of the potential to cause great bodily harm;

(2) he was not proven guilty beyond a reasonable doubt;

- 8 -

(3) the trial court abused its discretion when it sentenced him to a term of forty years of imprisonment;

(4) trial counsel was ineffective because he (a) submitted inadequate pretrial motions, (b) failed to conduct an adequate pretrial investigation, and (c) failed to effectively cross-examine the State's witnesses;

(5) trial counsel was ineffective because he did not attempt to negotiate a plea agreement;

(6) appellate counsel was ineffective because he (a) did not contend that trial counsel was ineffective, (b) did not raise a speedy trial claim, (c) did not raise a *Brady* claim, (d) did not argue that the jury was biased and non-representative, and (e) did not raise a prosecutorial misconduct claim;

(7) the post-conviction court violated the Constitution when it did not allow Gilbert to subpoena all of the witnesses listed in his post-conviction petition;

(8) the post-conviction court unreasonably applied Illinois Supreme Court Rule 651(c), which addresses the provision of the record for indigent litigants;

(9) the post-conviction court unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), when it denied his ineffective assistance of counsel claims;

(10) his post-conviction counsel was ineffective; and

(11) the prosecutor violated his constitutional rights when he (a) failed to submit evidence of Gilbert's drinking, (b) led the court to believe that Rodrigo's death was part of a "murder for profit" scheme, (c) stated in his opening that Gilbert had been charged with aggravated battery to a police officer and that Gilbert had made statements about his motive; (d) misstated the facts and included inflammatory statements in his closing argument, (e) was sarcastic at the sentencing hearing, (e) incorrectly told the jury that Gilbert had made inculpatory statements, (f) tried a case before a jury that was not composed of a cross-section of the community, (g) failed to charge Gilbert with reckless homicide, and (h) maliciously denied Gilbert a speedy trial.

For the following reasons, the court finds that none of these arguments are meritorious.

A.  Threshold Matters

The court will begin by summarizing the rules governing exhaustion and procedural default and by recapping the standard of review that guides this court in resolving Gilbert's § 2254 petition.

1.  Exhaustion and Procedural Default

Before this court may reach the merits of Gilbert's federal habeas claims, it must consider whether he has exhausted his state remedies and avoided procedural default under Illinois law. *See Mahaffey v. Schomig*, 294 F.3d 907, 914-15 (7th Cir. 2002).

a.  Exhaustion of State Court Remedies

To exhaust state court remedies, a petitioner must give the state courts an opportunity to act on each of his claims before he presents them to a federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). State remedies are exhausted when they are presented to the state's highest court for a ruling on the merits or when no means of pursuing review remain available. *Boerckel*, 526 U.S. at 844-45, 847; 28 U.S.C. § 2254(c). Here, Gilbert has exhausted his state court remedies because no state court relief is available to him at this stage in the proceedings.

b.  Procedural Default

Procedural default occurs when a petitioner fails to comply with state procedural rules. *Mahaffey*, 294 F.3d at 915. This occurs when the petitioner fails to pursue all appeals required by state law, *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), or fails to fully and fairly present his federal claims to the state court, *Boerckel*, 526 U.S. at 844. It also occurs when the state court did not address a federal claim because the petitioner failed to satisfy an independent and adequate state procedural requirement, *Stewart v. Smith*, 536 U.S. 856 (2002). If an Illinois

appellate court finds that a claim is waived, that holding constitutes an independent and adequate state ground. *Rodriquez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003).

Nevertheless, this court may still reach the merits of a procedurally defaulted claim if the petitioner establishes either cause for his failure to follow a rule of state procedure and actual prejudice, or that the default will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). To establish a fundamental miscarriage of justice, the petitioner must present new and convincing evidence of his innocence by showing that it is more likely than not that no reasonable juror would convict him in light of the new evidence. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### 2. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively"

- 11 -

unreasonable. *See Lockyer v. Andrade*, 123 S.Ct. 1166, 1174 (2003) (unreasonable application more than incorrect or erroneous). In order to be considered unreasonable under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Searcy v. Jaimet*, 332 F.3d 1081, 1089 (7th Cir. 2003) (decision need not be well reasoned or fully reasoned and is reasonable if one of several equally plausible outcomes); *Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) (reasonable state court decision must be minimally consistent with facts and circumstances of the case).

**B.     Gilbert's Claims**

**1.     Reckless Homicide Instruction**

Gilbert claims that the state trial court's refusal to give the jury a reckless homicide instruction is unconstitutional.[4] The state court did not address the question of due process. Instead, it found that a rational jury could not reach a reckless homicide verdict given the evidence presented. The court thus rejected Gilbert's instruction and the jury found Gilbert guilty of first degree murder.

In general, a state court's failure to instruct the jury on a lesser offense is a state law issue that does not create a federal constitutional question that is cognizable in a federal habeas corpus proceeding. *Armstead v. Frank*, 383 F.3d 630, 632 (7th Cir. 2004). Thus, a federal court considering this type of claim must focus on whether the failure to provide a requested instruction "so infected the entire trial that the resulting conviction violated the [petitioner's] right to due process." *Id.* When a petitioner contests the omission of an instruction, his burden is

---

[4] Gilbert's constitutional claims all rely on a laundry list of constitutional amendments which are allegedly at issue. Because Gilbert is proceeding pro se, the court will focus in on the applicable amendments, rather than discuss all of the amendments he cites.

"especially heavy" because "omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.*

In this case, the court is not persuaded that the failure to give the jury a reckless homicide instruction resulted in a miscarriage of justice. As the Illinois Appellate Court noted, a reckless homicide instruction is proper under Illinois law only where a defendant establishes that he had a blood or breath alcohol level of 0.10 or more or that he was incapable of driving safely. The trial record contained some evidence (testimony by Gilbert's mother) indicating that Gilbert was impaired but the trial judge credited other evidence from numerous witnesses indicating that Gilbert was able to drive safely. In addition, the Illinois Appellate Court found that the evidence showed Gilbert had committed first degree murder because he drove into Rodrigo, struggled with people who tried to detain him, fled the scene, and later said that Rodrigo "had it coming to him."

Thus, overwhelming evidence supported a verdict of first degree murder. On the other hand, testimony from Gilbert's mother, which the trial court did not credit and which was inconsistent with the testimony of all the other witnesses who addressed this issue, supported Gilbert's reckless homicide theory. In this instance, the failure to give Gilbert's reckless homicide instruction did not violate his right to due process or create a miscarriage of justice.

### 2. Guilt Beyond a Reasonable Doubt

Gilbert next contends he was not proven guilty beyond a reasonable doubt. As the respondent correctly notes, this claim is procedurally barred because Gilbert did not raise it in his state court proceedings. *See Castille v. Peoples*, 489 U.S. 346, 349 (1989) (failure to present claim to state intermediate court means that it is procedurally barred); *Boerckel*, 526 U.S. at 844 (failure to present claim to state's highest court means that it is procedurally barred). In any

event, a conviction must stand if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). If the court was to review the evidence in the light most favorable to the prosecution, it would conclude that ample evidence clearly supported the jury's verdict. Thus, even if this claim was properly before the court, it would still be unsuccessful.

### 3. Length of Sentence

Gilbert asserts that the trial court abused its discretion when it sentenced him to a term of forty years of imprisonment. He does not, however, claim that his sentence exceeded the sentencing range of a valid state statute. Accordingly, the severity of his sentence cannot form the basis of federal habeas relief. *See United States ex rel. Sluder v. Brantley*, 454 F.2d 1266 (7th Cir.1972); *see also Estelle v. McGuire*, 502 U.S. 62, 67 (noting that state law violations provide no basis for federal habeas relief). Moreover, Gilbert does not contend that the trial court lacked jurisdiction to impose a sentence upon him or that the trial court committed a constitutional error, which made his sentence fundamentally unfair. *See Gleason v. Welborn*, 42 F.3d 1107, 1112 (7th Cir.1994). Thus, his sentencing claim is beyond the province of federal habeas review.

### 4. Ineffective Assistance of Trial and Appellate Counsel

Gilbert raises multiple ineffective assistance claims in his federal habeas petition. As noted above, however, claims are only cognizable on federal habeas review if the petitioner first presents them to the state appellate *and* highest courts. *See Castille v. Peoples*, 489 U.S. at 349; *Boerckel*, 526 U.S. at 844. Gilbert properly presented two ineffective assistance claims: (1) Bogart (Gilbert's pretrial counsel) rendered ineffective assistance by allegedly telling Gilbert to lie about an alibi at trial; and (2) Rottenberg (Gilbert's trial counsel) rendered ineffective

- 14 -

assistance when he did not present Martinez' testimony about police harassment at trial. The remaining ineffective assistance claims are procedurally defaulted because they were not presented properly to the state courts.

To render effective assistance of counsel under the Sixth Amendment to the United States Constitution, counsel's performance must satisfy the well-known *Strickland* standard. *See Strickland v. Washington*, 466 U.S. at 687-91. Under the first prong of the *Strickland* standard, Gilbert must show that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. The second *Strickland* prong requires him to establish that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. If a defendant fails to satisfy one of the *Strickland* prongs, the court's inquiry under *Strickland* ends. *See id.* at 697; *see also Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2002).

With respect to Gilbert's claim that Bogart told him to perjure himself by lying about an alibi at trial, the state trial court held an evidentiary hearing and found that Gilbert's version of events was wholly incredible and against the manifest weight of the evidence. The Illinois Appellate Court found that, because Bogart never advised Gilbert to perjure himself, his conduct could not have violated *Strickland*. The holding that *Strickland* does not apply when the allegedly deficient advice was in fact never given is not "contrary to" or "an unreasonable application of" *Strickland*. The court also notes that Gilbert's claim that the state court was required to accept his version of events and then determine if counsel's conduct was constitutionally effective, petition at p. 6-B, is flatly incorrect. The trial court, instead, was required to make findings of fact and then apply the law to the facts.

- 15 -

The court thus turns to Gilbert's claim that Rottenberg provided constitutionally ineffective assistance when he failed to call Martinez to testify about alleged prior police harassment. The state court correctly summarized the controlling Supreme Court precedent (*Strickland*) and found that Rottenberg's failure to present Martinez' testimony at trial was not prejudicial due to the overwhelming evidence of Gilbert's guilt. Specifically, the State presented a witness who saw Gilbert drive into Rodrigo, two witnesses saw him flee the scene, and a witness heard Gilbert say that Rodrigo "had it coming to him." Given this overwhelming evidence, the state court concluded that testimony about police malice would not have affected the outcome. This conclusion is an objectively reasonable application of *Strickland* to the facts of the case as well as easily inside "the boundaries of permissible differences of opinion." *See Hardaway v. Young*, 302 F.3d at 762. Thus, Gilbert is not entitled to habeas relief on his ineffective assistance claims.

### 5. Unreasonable Application of State Law

Gilbert contends that he is entitled to federal habeas relief because the post-conviction court unreasonably applied the Illinois Supreme Court Rules. This argument rests entirely on state law. Moreover, Gilbert does not contend that the state court's rulings were at odds with any United States Supreme Court authority. His request for federal habeas relief based on the allegedly improper application of state procedural rules is, therefore, doomed as this court may only address the merits of claims based on "alleged violations of the federal constitution, laws and treaties." *Biskup v. McCaughtry*, 20 F.3d 245, 247 (7th Cir. 1994) ("§ 2254 cannot be invoked simply . . . to review alleged violations of state law").

### 6. Ineffective Assistance of Post-Conviction Counsel

Gilbert next takes issue with the representation provided by his post-conviction counsel. "There is no right to effective counsel in post-conviction hearings." *Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir. 1998) (internal citations omitted)(finding that alleged ineffective assistance of post-conviction counsel did not establish cause to excuse procedural default because there is no Sixth Amendment right to effective post-conviction counsel). Thus, Gilbert's ineffective assistance of post-conviction counsel cannot state a constitutional claim that is cognizable in a federal habeas case.

### 7. Subpoenas and Prosecutorial Misconduct

Finally, Gilbert also asserts that the state post-conviction court violated the Constitution when it did not allow him to subpoena all of the witnesses listed in his post-conviction petition. He also lists a litany of complaints about the prosecutor's actions during Gilbert's trial and sentencing. These claims are procedurally barred because Gilbert failed to raise them at each level of the state court proceedings. *See Castille v. Peoples*, 489 U.S. at 349; *Boerckel*, 526 U.S. at 844.

### 8. Exceptions to Procedural Default

A federal court may not grant relief on a procedurally defaulted claim unless the petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. at 750. Although Gilbert does not contend that cause and prejudice or the fundamental miscarriage of justice exceptions excuse his default, the court will nevertheless consider whether these exceptions can help him.

Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 282 (1999). Here, Gilbert failed to properly follow state procedural rules. Nothing in the record before the court indicates that an objective factor prevented him from doing so. Thus, cause does not excuse his default. Moreover, an allegation of ineffective assistance of counsel is not, by itself, enough to establish prejudice. *See Pitsonbarger v. Gramley*, 141 F.3d at 737. Thus, neither cause nor prejudice exists.

The fundamental miscarriage of justice exception is also inapplicable because "this relief is limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). To show "actual innocence," a petitioner must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him. *Id.* Gilbert's petition, as well as the state court pleadings submitted to the court, do not contain any substantiated allegations of actual innocence as Gilbert presently argues that he killed his brother recklessly as opposed to intentionally. Thus, this exception does not apply.

III. Conclusion

For the above reasons, Gilbert's § 2254 petition [1-1] is denied.

DATE: 11-30-04

Blanche M. Manning
United States District Court Judge

04cv6340.hab